IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KEVIN KENNEY,

        Petitioner,

                                                                                 No.:1:18-cv-01163-JCH-KRS

v.

STATE OF NEW MEXICO, and
ATTORNEY GENERAL OF THE
STATE OF NEW MEXICO,

        Respondents.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

        Kevin Kenney, a paroled state inmate, petitions for a writ of habeas corpus under 28 U.S.C. § 2254.  Following a trial in Bernalillo County, a jury convicted Kenney of driving while intoxicated and with inoperable taillights.  As a seven-time DWI offender, Kenney was sentenced to three years in prison and two years of parole.  Kenney unsuccessfully appealed his conviction to and sought postconviction relief in the state courts.  In the instant petition, Kenney claims (1) the arresting officer's failure to take a blood sample and the trial court's denial of an evidentiary hearing as part of sentencing violated his due process rights; (2) the trial court denied him the right to testify on his own behalf; and (3) his lawyer rendered constitutionally ineffective assistance at trial.  Pursuant to an order of reference, *see* (Doc. 6); 28 U.S.C. 636(b), the Court has considered the parties' submissions along with the available record.  Having done so, the Court **RECOMMENDS** that Kenney's petition be **DENIED** and this matter **DISMISSED with prejudice**.

**I.**      **BACKGROUND**

        On September 8, 2016, Albuquerque Police Officer Christopher Rody observed Kenney operating a vehicle without functioning taillights.  (Doc. 10-1, at 38).  Officer Rody pulled

Kenney over and noticed telltale signs of intoxication.  (*Id.* at 39.).  When asked, Kenney admitted to drinking a beer.  (*Id.*).  As a result of this admission and the other indicia of consuming alcohol, Officer Rody directed Kenney to exit the vehicle and perform standardized field sobriety tests in the rainy weather.  (*Id.*)

Kenney advised Officer Rody that Kenney had a medical condition that caused him back pain.  (*Id.*).  Kenney nonetheless performed the "walk-and-turn" and "one-leg-stand" tests.  He did poorly.  Officer Rody asked Kenney to complete two alternative sobriety tests, counting backwards and reciting the alphabet.  (*Id.*).  Because Kenney was cold from the rain, he refused.  Rody then arrested Kenney.  (*Id.*)  At the prisoner transport center, Kenney demanded a blood test, but Rody offered only a breath test, which Kenney declined.  Ultimately, neither test was performed.  (*Id.*)

On September 28, 2016, a grand jury returned a three-count indictment against Kenney charging him with (1) aggravated driving while under the influence, or alternatively with, driving while under the influence, *see* N.M. Stat. Ann. §§ 66-8-102(D)(3) or 66-8-102(A); (2) driving with a suspended or revoked license or, alternatively with having no driver's license, *see* N.M. Stat. Ann. §§66-5-39.1 or 66-5-2; and (3) failure to have operating tail lights, *see* N.M. Stat. Ann. §66-3-805.  (*Id.* at 1-4).

Before trial, Kenney moved to suppress evidence.  (*Id.* at 19-24).  Kenney asserted that Officer Rody's failure to arrange for a blood test violated Kenney's due-process rights.  (*Id.*)  Kenney asked that Officer Rody be precluded from testifying or the trial court issue a "curative" instruction to the jury that a blood test would have been favorable to Kenney.  (*Id.*)  Kenney also filed a motion *in limine* to prevent admission of his prior felony convictions should he testify.  (*I*. (*Id.* at 40).  The trial court orally denied both motions.  (*Id.* at 46-53).  Pursuant to an agreement between the parties, the trial court also severed Count II of the indictment.  (*Id.* at 7).

The case went to trial from April 17 to 18, 2017. (*Id.* at 5-6; 40-41). Officer Rody was the sole witness. Aside from Officer Rody's testimony, the prosecution offered no other evidence of Kenney's intoxication. (*Id.* at 41). A jury nonetheless found Kenney guilty of aggravated driving while intoxicated and not having operating taillights. (*Id.*). Sentencing was set for a later date.

On May 25, 2017, the prosecutor filed a supplemental information notifying Kenney of the state's intent to use seven prior DWI convictions to increase his sentence. (*Id.* at 15-17). According to the information, as his eighth DWI offense, Kenney faced an "enhanced penalty pursuant to §66-8-102(K), NMSA 1978, as amended, . . . with an exposure of twelve (12) years of which ten (10) years is a mandatory incarcerated sentence . . ." (*Id.*) For his part, Kenney requested an evidentiary hearing for the prosecutor to "prove the existence of valid priors by a preponderance of the evidence." (*Id.* at 8-10).

The trial court held sentencing on August 10, 2017. (*Id.* at 10-14). Although the court did not conduct an evidentiary hearing as Kenney requested, it did conclude one prior DWI conviction could not be used to enhance his sentence. (*Id.*). Consequently, the trial court sentenced Kenney as a seven-time offender to three years' incarceration with the New Mexico Department of Corrections followed by two years' parole. (*Id.*). As for the inoperable taillights, the trial court imposed a fifteen-dollar fine, which it suspended. (*Id.*).

Kenney unsuccessfully appealed his conviction to the New Mexico Court of Appeals ("NMCA") and applied for postconviction relief in the trial court. (*Id.* 46-66). At separate times, the New Mexico Supreme Court declined to review these denials. (Doc. 10-2 at 181). On December 11, 2018, Kenney filed the instant petition under 28 U.S.C. § 2254. (Doc. 1). Respondents answered on September 10, 2019. (Doc. 10).

## II. STANDARD

The Antiterrorism and Effective Death Penalty Act ("AEDPA") limits the Court's review of habeas-corpus petitions brought under 28 U.S.C. § 2254.  As a matter of comity and to safeguard against only "extreme malfunctions in the state criminal justice systems," the Court may grant relief only "if the state court's decision was contrary to, or an unreasonable application of, clearly established federal law" or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented."  *Smith v. Aldridge*, 904 F.3d 874, 880 (10th Cir. 2018) (citations omitted).  This hurdle is necessarily "dauting" in deference to the state courts.  *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011).  As to the first prong, the petitioner must show that the state court's decision applied "a rule that contradicts the governing law set forth in [Supreme Court] cases [or] if the state court confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision and nevertheless arrives at a result different from [the Court's] precedent."  *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000).

The state court need not cite or even demonstrate awareness of Supreme Court precedent if the state court's reasoning and result do not contradict controlling decisions. *See Early v. Packer*, 537 U.S. 3, 8 (2002). To reach the level of an "unreasonable application," the petitioner must show more than an incorrect conclusion—the state court must have been objectively unreasonable in its decision, not a "subjective assessment" of the "views of the judges on the relevant state court (or, for that matter, the views of individual federal judges)." *Hooks v. Workman*, 606 F.3d 715, 751 (10th Cir. 2010). Under the second prong, the petitioner must show that "all reasonable minds reviewing the record would have to agree that the state court's determination of facts was incorrect." *Smith*, 904 F.3d at 880.  And the adverse decision must be based on that unreasonable determination of the facts. *See id*.

### III.   DISCUSSION

Kenney asserts he was convicted in violation of his due-process rights, his right to testify on his own behalf, and the Constitution's guarantee of effective assistance of counsel. The Court concludes that Kenney failed to show the state court's decisions were contrary to, or an unreasonable application of, clearly established federal law or the state court's decisions were based on an unreasonable determination of the facts in light of the evidence presented.

#### A.   **Due Process**

Kenney contends the trial court violated his due-process rights when it denied (1) his motion to suppress based on Officer Rody's failure to collect a blood sample; and (2) his request for an evidentiary hearing prior to sentencing.

##### 1.   *Suppression*

The NMCA rejected Kenney's challenge in two filings. In a notice proposing summary affirmance, which was later incorporated into an unpublished memorandum opinion, the NMCA reasoned:

> Prior to trial, Defendant filed a motion to suppress any testimony from Officer Rody, asserting [the officer's] failure to gather evidence denied him a fair trial. Citing *State v. Ware*, 1994-NMSC-091, 118 N.M. 319, 881 P.2d 679, Defendant argued that the failure to collect the blood sample was done in bad faith in an attempt to prejudice Defendant's case, and, accordingly Officer Rody should not be permitted to testify, or alternatively, a curative instruction directing the jury to infer that the uncollected evidence would have been favorable to Defendant should be given. The district court apparently orally denied Defendant's motion. Defendant challenges this ruling.
> In *Ware,* our Supreme Court directed courts to consider two factors to determine whether the State should be sanctioned for failure to gather evidence. Defendant relies on *Ware* in arguing that Officer Rody was under an obligation to collect a blood sample. For the reasons that follow, however, we disagree with Defendant that the *Ware* analysis is applicable to the present case.
> Under the Implied Consent Act, all persons who operate a motor vehicle "shall be deemed to have given consent . . . to chemical tests of his breath or blood or both . . .as determined by a law enforcement officer." NMSA 1978, § 66-8-107 (A) (1993). . . .[T]he act gives law enforcement officers the choice of whether to administer a breath test or blood test. Accordingly, Defendant was not in a position

> to dictate the choice of testing to determine his blood alcohol level. Further, contrary to what Defendant argues, the limited duty to collect evidence as described in *Ware* does not supply a basis for requiring an officer to agree to blood testing when a DWI suspect refuses a breath test.
>
> That said, we recognize that "if [a] driver's blood is not preserved for testing, critical evidence ... is irretrievably lost, and a question arises as to whether due process was violated." For that reason, "a person accused of DWI who takes the test ordered by the arresting officer then has a right to take an additional test of his own choosing, and to thereafter challenge any disparate results. This right, however, does not permit the person to refuse the initial test ordered by the officer; instead, it gives the person the option of additional testing once he has already submitted to the option chosen by the officer. *Id.* Hence, . . . Officer Rody was under no obligation under *Ware* to collect a blood sample from Defendant in this case. Rather, if Defendant wanted to ensure that such evidence would be available to him for use in his defense, he should have taken the breath test and then exercised his right to an independent blood test as provided for by law.

(Doc. 10-1, at 47-49) (citations omitted).  The New Mexico Supreme Court denied certiorari.

This Court can discern no unreasonable application of clearly established federal law. Due process "requires criminal prosecutions [to] comport with prevailing notions of fundamental fairness."  *California v. Trombetta*, 467 U.S. 479, 485 (1984).  Among other rights, criminal defendants must "be afforded a meaningful opportunity to present a complete defense," which embodies "constitutionally guaranteed access to evidence." *Id.* (citation omitted).  To that end, the state government has an affirmative duty to preserve evidence that "might be expected to play a significant role in the suspect's defense." *Id.* at 488.

But the United States Supreme Court has not extended any such duty to create and collect evidence as Kenney suggests here.  In fact, *Trombetta*, the primary case Kenney cites, stands for the proposition that the police are under no affirmative duty to take steps to gather potentially exculpatory evidence on behalf of a defendant. *Id.*  In any event, as the name suggests, due process mandates fairness in procedures, not outcomes.  Here, as the NMCA highlighted, the Implied Consent Act gave Kenney the option of a blood test, contingent upon Kenney agreeing to the breath test.  Kenney, however, refused a breath test.  Kenney's tactical decision to forego a

breath test thereby extinguishing his right to an independent blood test does not implicate due process. The NMCA's holding under *Ware* therefore did not contravene clearly established due process rights under the federal Constitution.[1]

### 2.   *Evidentiary Hearing*

Following trial, Kenney requested an evidentiary hearing demanding that the prosecutor prove the validity of each of his prior DWI convictions by a preponderance of the evidence and using procedures akin to those under New Mexico Habitual Offender Act.[2] Kenney recognized "that existent law does not require the State to meet such an evidentiary burden," but argued "the legal context has changed" meaning "the penalties for DWI have increased markedly . . . especially with respect to the step up in penalty from a DWI 7th to 8th."[3] (Doc. 10-1, at 9). The trial court orally denied this request. It did, however, consider Kenney's seven previous convictions and determined one did not qualify. Thus, the trial court sentenced Kenney as a seven-time offender and imposed a custodial term of three years and two years of parole. As on direct appeal, Kenney asserts due process required the trial court to hold an evidentiary hearing and hold the prosecutor to a preponderance-of-the-evidence burden of proving the validity of the prior convictions.

---

[1] To the extent Kenney raises a Fourth Amendment challenge, the Court agrees with Respondents that *Stone v. Powell*, 428 U.S. 465, 482 (1976) precludes habeas relief where the state court provided the petitioner "an opportunity for full and fair litigation[.]" Kenney does not offer any argument on this point, and the Court observes that Kenney took advantage of filing a motion on the point and appealing the trial court's adverse determination.

[2] This Act allows the trial court to increase a basic sentence based on a defendant's commission of certain types of felonies in the past and requires a hearing if the defendant denies committing the past offenses. *See* N.M. Stat. Ann. §§ 31-18-17 & 33-18-20.

[3] . Like many states, New Mexico employs a graduated sentencing scheme for DWI recidivists. *See* N.M. Stat. Ann. § 66-8-102(E) – (K) (2016). While the third DWI offense remains a misdemeanor, subsequent convictions constitute felonies. As is relevant there, the penalty associated with a seventh conviction, a third-degree felony, is "a term of imprisonment of three years, two years of which shall not be suspended, deferred or taken under advisement." Id. An eighth or subsequent offense carries "a term of imprisonment of twelve years, ten years of which shall not be suspended, deferred or taken under advisement." Id.

In its notice proposing to summarily affirm the district court and incorporated into its memorandum opinion, the NMCA rejected Kenney's claim:

> Our case law is very clear that the differences between sentencing for prior DWIs and prior felonies under the [Habitual Offender Act] are significant, and for this reason, attempts to analogize the two statutory provisions have been unsuccessful. Among the differences, we have pointed out that in the context of DWIs, extra punishment is tied to recurrence of the offense as a form of pure punishment and deterrence, whereas with enhanced sentences for other crimes, harsher sentences are merited because of the failure to reform. Additionally, under the HOA, a defendant can receive an habitual sentence which is much more severe than the sentence for the principal crime committed. The same sort of punitive baggage is not at play under the DWI sentencing provisions because sentences based on repeat convictions do not impose a separate sentence on top of a basic sentence. Instead, repetition of offense is accounted for by increasing the basic punishment per numbered conviction.
> In *State v. Diaz*, we noted yet another difference—"sentencing for DWI does not entail a proceeding that is separate and apart from the DWI case itself." "Habitual offender enhancements, on the other hand, despite the mandatory tone of the statute, are not automatically included in any sentence imposed on a defendant." Considering the noted differences in structure and purpose, we do not find persuasive Defendant's argument that the district court erred by failing to grant Defendant's request that the protections and procedures in place for habitual offender proceedings be followed in this case.

(Doc. 10-1, at 47-49) (citations omitted). The New Mexico Supreme Court denied certiorari.

Kenney is not entitled to habeas relief in this Court. The NMCA's analysis and more generally New Mexico's enhanced sentencing scheme fall outside the purview of Section 2254. *See Dority v. Farris*, 560 F. App'x 786, 790 (10th Cir. 2014) (explaining that a state court's "application or misapplication of the state's sentence enhancement is a matter of state law that is not cognizable in a habeas proceeding") (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). Even construing his claim more broadly, Kenney implicitly concedes that he received at least some process. By way of a supplemental information Kenney received notice of the particular prior convictions the prosecutor intended to use to obtain an enhanced sentence and the trial court held a separate sentencing hearing. To be sure, the

trial court rejected one of Kenney's previous convictions, which reduced Kenney's potential sentence by nine years. *Compare* N.M. Stat. Ann. § 66-8-102(J) *with* § 66-8-102(K).

Although the trial court denied Kenney the process he wanted, Kenney cites to, and Court could find, no clearly established federal authority that due process requires an evidentiary hearing where the prosecution must prove validity of past DWI convictions to determine the sentence for a subsequent DWI offense. To the contrary, the Supreme Court has upheld recidivist statutes placing the entire burden of proof on a criminal defendant to demonstrate a past conviction's invalidity. *See Parke v. Raley*, 506 U.S. 20, 33-34 (1992) (observing that, consistent with due process, federal recidivism statutes may properly place on the defendant the entire burden of proving the invalidity of a prior conviction). On the record before it, the Court cannot say that the NMCA unreasonably or incorrectly applied federal law.

### B. Right to Testify

Kenney contends that he was denied the right to testify on his own behalf. On direct appeal, the NMCA disagreed in the same order discussed above proposing to summarily affirm and later incorporated into a memorandum opinion:

> Prior to trial, Defendant filed a motion in limine asking that the district court "exclude impeachment evidence of prior felony convictions . . . in the event [Defendant] chooses to testify." Because Defendant was charged with DWI in this case, he argued that the use of his several prior DWI convictions to impeach his credibility would be unduly prejudicial. This motion was apparently orally denied. At trial, Defendant chose not to testify-in large part because of "the danger of the jury learning that he had been previously convicted for DWI" and the potential for misuse of that information. As a result, Defendant contends that his right to testify in his own defense was unfairly infringed upon.
> [E]ven if he had preserved this issue, . . .his argument is without merit. We addressed a very analogous situation in *State v. Massengill*. In that case, the defendant chose not to testify after the trial court ruled that a prior conviction would be admissible for impeachment purposes if he took the stand.

> The defendant argued that the ruling deprived him of his right to testify in his own defense. In rejecting the argument, we explained:
>> although an accused may hesitate to take the witness stand if his past criminal record is such that his credibility will probably be completely destroyed in the eyes of the jury . . .this in no way impairs his right against self-incrimination, his right not to be deprived of his life, liberty or property without due process of law, nor his right to a public trial by an impartial jury.
>
> Consistent with Massengill, we . . .reject Defendant's argument and affirm with respect to this issue.

(Doc. 10-1, at 47-49) (citations omitted).  The New Mexico Supreme Court declined to review this decision.

The Court agrees with the NMCA.  In rejecting Kenney's argument, the NMCA accurately stated and applied federal law.  Although the Sixth Amendment guarantees a defendant the right to testify, it does not shield him against otherwise valid impeachment evidence. *See Harris v. New York,* 401 U.S. 222, 225 (1971) (explaining prosecution entitled to impeach a testifying defendant as any other witness by resort to "the traditional truth-testing devices of the adversary process.").  In any event, Kenney's refusal to testify is dispositive.  Where the defendant does not take the stand, it is impossible to assess the "possible harm flowing from a district court's *in limine* ruling permitting impeachment by a prior conviction." *Luce v. United States*, 469 U.S. 38, 41-42 (1984).  Speculation arises because a pretrial decision admitting past offenses is subject to change as the evidence at trial develops.  *Id.* (explaining change may occur "if the actual testimony differs from what was . . . in [a party's] proffer" and "even if nothing unexpected happens . . . the district judge is free . . to alter a previous *in limine* ruling").  Thus, whether the trial court here "would have allowed [the prosecution] to attack petitioner's credibility at trial by means of the prior conviction" amounts to "a matter of conjecture." *Id.*   Kenney has therefore not demonstrated an entitlement to habeas relief.

C.     **Ineffective Assistance of Counsel**

Kenney asserts his trial attorney rendered constitutionally ineffective assistance when counsel failed to introduce at trial (1) a note from his doctor, and (2) a copy of N.M Stat. Ann. § 66-8-111(A).  In summarily denying Kenney's application of postconviction relief, the trial court determined both contentions were "factually insufficient" and failed to "state a claim for which relief can be granted." (Doc. 10-2, 62).  The New Mexico Supreme Court declined to review the trial court's denial of Kenney's collateral challenge.

When a state inmate "alleges ineffective assistance of counsel, deference exists both in the underlying constitutional test (*Strickland*) and the AEDPA's standard for habeas relief, creating a 'doubly deferential judicial review.'" *Harris v. Sharp*, 941 F.3d 962, 973-74 (10th Cir. 2019) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).  In applying this double deference, the Court asks whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Ellis v. Raemisch*, 872 F.3d 1064, 1084 (10th Cir. 2017) (citation omitted).  *Strickland v. Washington*, 466 U.S. 668, 692 (1984), of course requires the petitioner to show not only a deficiency in the representation but also prejudice.  Prejudice means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Here, Kenney has not carried his burden.  In the note, Kenney's treating physician, Vance Zachary, M.D. explained "Kenney is a patient of ours at Lovelace Southwest Medical Associates Westside Clinic" and had been so for a year as of April 6, 2017.  Dr. Zachary observed Kenney is "being treated for chronic low back pain" and opined "Kenney may not be able to easily do the maneuvers for a field sobriety test due to his back problems."  Section 66-8-111(A) of the New Mexico Statutes, the provision Kenney wanted his lawyer to introduce into evidence at trial,

authorizes a law enforcement officer to obtain a warrant for chemical testing of an arrestee in DWI cases involving "great bodily harm" where the arrestee refuses to submit to testing.

Contrary to Kenney's argument, the doctor's note was not exculpatory.  Dr. Zachary's letter was equivocal at best—Kenney's back problems *might* make performance of field sobriety tests difficult. Similar information was already before the jury.  Officer Rody testified that Kenney blamed his back and the weather conditions for his inability to complete the tests.  More significantly, Kenney's back problems do not speak to his refusal to perform alternative sobriety tests that required no motor skills or physical exertion at all, counting and reciting the alphabet.  As for the statute, even assuming a copy of the law should be admitted into evidence, the provision Kenney cited only applies where great bodily injury is involved, not his case where no such injury was implicated.  Thus, there is no reasonable probability of a different outcome on these facts even assuming deficient lawyer performance in the first place.   As above, Kenney fails to show an entitlement to habeas relief.   `

## IV.   CONCLUSION

For the reasons stated above, Kenney has not demonstrated that the state courts unreasonably applied federal law or made an unreasonable determination of the facts in upholding his convictions.  Kenney therefore is not entitled to relief under 28 U.S.C. § 2254.

**IT IS, THEREFORE, RECOMMENDED** that Kenney's petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and this matter **DISMISSED** with prejudice.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE

**WITHIN FOURTEEN (14) DAYS AFTER A PARTY IS SERVED WITH A COPY OF THESE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION, THAT PARTY MAY, PURSUANT TO 28 U.S.C. § 636(B)(1), FILE WRITTEN OBJECTIONS TO SUCH PROPOSED FINDINGS AND**

**RECOMMENDED DISPOSITION.  A PARTY MUST FILE ANY OBJECTIONS WITH THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO WITHIN THE FOURTEEN (14) DAY PERIOD ALLOWED IF THAT PARTY WANTS TO HAVE APPELLATE REVIEW OF THE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION.  IF NO OBJECTIONS ARE FILED, NO APPELLATE REVIEW WILL BE ALLOWED.  PURSUANT TO FED. R. CIV. P. 72(B)(2), A PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE OBJECTIONS.**